OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



December 29, 1999

The Honorable Debra Danburg
Chair, Committee on Elections
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0160

Re:    Whether an ad hoc intergovernmental working group is subject to the Open Meetings Act, chapter 551 of the Government Code   (RQ-0096-JC)

Dear Representative Danburg:

You have requested our opinion as to whether an ad hoc intergovernmental working group is subject to the Open Meetings Act, chapter 551 of the Government Code. We conclude that, under the circumstances you describe, such an entity is not within the ambit of that statute.

Harris County, the City of Houston, and the Houston Independent School District propose to enter into a contract (the "agreement") under the Interlocal Cooperation Act, section 791.011 of the Government Code, "to jointly coordinate the sale of tax foreclosed property pursuant to the authority granted by" chapter 34 of the Tax Code. *See* Proposed Interlocal Agreement for the Sale of Seized and Tax Foreclosed Property, Harris County-City of Houston-Houston Ind. Sch. Dist., Final Draft, at 1 (on file with Opinion Committee) [hereinafter "Proposed Interlocal Agreement"]. The agreement provides that each party is to appoint "one officer or employee" as a member of a three-member committee. *Id.* at 2. Each party is required to "direct its attorney for delinquent ad valorem tax matters to prepare a list of all properties to be scheduled for foreclosure or resale." *Id.* At meetings of the committee, the members, after receiving the proposed tax foreclosure sales or resales, "may postpone the foreclosure or resale of any property to conduct any additional investigations that the Members deem necessary." *Id.* at 4. A property scheduled for foreclosure or resale must be removed from the list if a "member objects to the sale." *Id.* "If a member objects to a sale or resale, but another Member desires to proceed," the terms of the interlocal agreement do not apply. *Id.* The committee is also required to "adopt a marketing program or place public notices to promote the resale of Struck-Off Properties." *Id.*

The three-member committee is funded by an initial deposit of $10,000 by each of the three entities into an account in the name of the county, and the account may be replenished as needed. The committee may authorize the expenditure of funds from this account with the unanimous approval of the members. *Id.*

A brief submitted by the committee's attorney states that "it is not contemplated that any member of the three (3) entities['] governing bodies will be a member of the committee or would attend the meetings." Brief from William E. King, Houston Managing Partner, *Linebarger, Heard, Goggan, Blair, Graham, Pena, & Sampson, LLP, Attorneys at Law*, to Elizabeth Robinson, Chair,

Opinion Committee, Office of the Attorney General, at 1 (Nov. 12, 1999) (on file with Opinion Committee) [hereinafter "Brief"]. Although nothing in the proposed interlocal agreement precludes such an arrangement, we will assume for purposes of this opinion that no county commissioner, city council member, or school trustee will serve as a member of the committee. The brief also notes that "the committee has the power to take only two actions." *Id.* The first is the power of "any one member . . . [to] object to the sale of any property proposed for foreclosure," on the basis of the policies of the entity he or she represents. *Id.* Those policies are not set by the committee, or any of its members, but are established by each entity itself. The brief explains that a member may interpose a temporary objection to a sale because of "the [in]adequacy of the work done in taking the judgment," and demand further investigation. *Id.* at 2. With regard to the decision of ultimate sale, however, the agreement does not permit any member to impose his or her will on the governmental entity of another member. If the other member "*desires to proceed*" with the sale, that particular property is removed from the terms of the agreement. *See* Proposed Interlocal Agreement at 4.

The other power of the committee, according to the brief, is the authority to manage "struck-off" properties, *i.e.*, those temporarily removed from sale because the minimum bid required by statute (taxes + costs) has not been received. The agreement proposes to share the burden of maintenance costs, additional investigation, and remarketing, by permitting the committee to expend funds from its account for these purposes. The brief notes, however, that the initial deposit into the account will have been approved by the governing body of each entity, "and to the extent[] state law requires competitive bidding, those matters will be submitted to the governing bodies for approval." *See* Brief at 2.

The Open Meetings Act defines "governmental body" as, *inter alia,*

> (B)   a county commissioners court in the state;
>
> (C)   a municipal governing body in the state;
>
> (D)   a deliberative body that has rulemaking or quasi-judicial power and that is classified as a department, agency, or political subdivision of a county or municipality;
>
> (E)   a school district of trustees;
>
> . . . . [and]
>
> (H)   the governing board of a special district created by law; . . .

TEX. GOV'T CODE ANN. § 551.001(3) (Vernon Supp. 2000).

Numerous opinions have held that a subcommittee of a governmental body may itself be subject to the Open Meetings Act, even though the subcommittee consists of less than a quorum of

the parent body. *See, e.g.,* Tex. Att'y Gen. Op. Nos. JC-0060 (1999); JC-0053 (1999). In the situation you pose, however, no member of one of the three governing bodies is a member of the committee. Furthermore, as the brief points out, it is not "contemplated that the governing bodies will 'ratify' or otherwise act on the actions taken by the committee." *See* Brief at 1. In Attorney General Opinion JC-0060, we indicated, in effect, that the relevant factors to be considered are: (1) the composition of the subcommittee; (2) its purpose; and (3) the extent to which its recommendations are "rubber-stamped" by the parent body. Tex Att'y Gen. Op. No. JC-0060 (1999) at 2-3. Neither the composition of the committee, nor its purpose, nor the possibility of "rubber-stamping," nor all together, lead to the conclusion that it is a subcommittee of any of the governmental bodies that compose its membership.

We must also consider the applicability of the court's decision in *Sierra Club v. Austin Transportation Study Policy Advisory Committee,* 746 S.W.2d 298 (Tex. App.–Austin 1988, writ denied). In that case, the entity was composed of seventeen state, county, regional, and municipal public officials, whose purpose was to "play[] a vital role in deciding which highway projects are planned, built and funded in the Austin urban area." *Id.* at 300-01. The committee had also been designated a "Metropolitan Planning Organization" for purposes of "receiving federal highway funds." *Id.* at 300. The court held that the committee was "'a special district' and thus a 'governmental body' within the terms of the Open Meetings Act." *Id.* at 301.

In *Sierra Club,* the committee was comprised of *public officials* rather than employees. *Sierra Club,* 746 S.W.2d at 300. In addition, the committee's designation of a particular highway project was a prerequisite for that project's immediate funding. *Id.* Finally, the committee had been officially designated by the governor as a "Metropolitan Planning Organization" in compliance with federal law. *Id.* In our opinion, the committee of which you inquire bears little resemblance to the significant policy-making creature of *Sierra Club.* It appears to constitute, rather, an informal working group of staff persons whose purpose is to coordinate the details of interlocal tax foreclosures and sales. The according of "special district" status to an entity not designated as such by the legislature has not been extended (or followed) in the nearly twelve years since *Sierra Club,* and we decline to do so here on such a flimsy reed. It is therefore our opinion that the three-member committee is not a "governmental body" under the terms of the Open Meetings Act.

## S U M M A R Y

An ad hoc intergovernmental working group consisting of non-elected public officials, and whose purpose is to confer with private legal counsel hired by each governmental body regarding the sales and foreclosures of tax judgments on delinquencies within their overlapping jurisdictions, is not as a matter of law a "governmental body" for purposes of the Open Meetings Act.

Yours very truly,

JOHN CORNYN
Attorney General of Texas


ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General - Opinion Committee